IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | Criminal No. 3:12MJ378 |
| | ) | |
| KENNETH A. WINGLE, | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Defendant Kenneth A. Wingle seeks suppression of evidence obtained by the police from his vehicle after a traffic stop that followed Defendant's vehicle swerving and nearly colliding with a police vehicle that was travelling in the adjacent lane. The police officer stopped Defendant's vehicle, believing that the swerving resulted from Defendant texting while he was driving. After stopping Defendant's vehicle, the police officer determined that Defendant was driving under the influence of alcohol and charged him with that offense, as well as using a handheld device (texting) while driving, failure to stay in one lane, resisting arrest without force and possession of marijuana. Defendant challenges the validity of the stop, arguing that the police officer stopped Defendant solely for texting while driving. Because texting while driving is a secondary offense in the Commonwealth of Virginia, Defendant asserts that the stop of his vehicle violated the Fourth Amendment. For the reasons that follow — most notably that the police officer had cause to stop and issue a citation to Defendant for reckless driving, the Court DENIES Defendant's motion.

I. Factual Background

The Court conducted an evidentiary hearing on Defendant's motion on November 26,

2012.[1] At the hearing, the arresting officer, Police Officer Brian Michaels, testified as to the events leading up to the stop of Defendant's vehicle. Defendant called no witnesses and offered no evidence that contradicted Officer Michaels' description of the events. After viewing Officer Michaels' testimony and considering all of the evidence admitted during the hearing, the Court found Officer Michaels to be credible as to all aspects of his testimony. (Suppression Hearing Transcript "Tr." at 35, 41.) Officer Michaels' testimony established the following facts.[2]

Officer Michaels has been employed as a police officer with the Department of the Army for approximately five years and has roughly 25 years of prior law enforcement experience. (Tr. at 3.) Shortly after midnight on September 2, 2012, Officer Michaels was on duty and in uniform as a patrolman in an unmarked car travelling eastbound on Route 36. (Tr. at 3-4.) As Officer Michaels stopped his vehicle at the red light at the intersection of Sisisky and Temple streets on the Ft. Lee Military Base. (Tr. at 4.) While stopped at the red light, Officer Michaels observed Defendant's vehicle in the adjacent, left lane and noticed that a passenger in Defendant's vehicle was texting. (Tr. at 4.)

When the light turned green, both Officer Michaels and the driver of the vehicle in the left-hand lane, later identified as Defendant, "came off of the light." (Tr. at 4.) Defendant drove ahead of Officer Michaels and, as Officer Michaels began to pull alongside and then in front of Defendant's vehicle, Defendant's vehicle began to drift right towards Officer Michaels' lane. (Tr. at 4-5.) At that time, Officer Michaels applied his brakes and looked over at the driver

---

[1] During the hearing, defense counsel made clear that Defendant only challenges the validity of the stop, not the scope of the search after the stop occurred. (Tr. at 14; *see also United States v. Vaughan*, 700 F.3d 705, 709-10 (4th Cir. Nov. 29, 2012) (setting forth the two-step analysis for evaluating the propriety of a traffic stop)). Therefore, the hearing addressed only the validity of the stop. This Opinion will do the same.

[2] At the conclusion of the hearing, the Court set forth its Findings of Fact. (Tr. at 34-40.) This factual background encompasses the Court's Findings of Fact.

2

(Defendant) and saw that Defendant "had his head down looking towards his lap and the front of his face and chest was (sic) lit up in a bluish-white light." (Tr. at 5, 31.)

As Officer Michaels observed Defendant's vehicle drifting, he was unable to determine if Defendant's vehicle actually crossed the dividing line between the lanes. (Tr. at 5, 8.) However, Officer Michaels applied his brakes, so that Defendant's vehicle would not hit Officer Michaels' car. (Tr. at 5-6.) At the time of the incident, Officer Michaels' vehicle contained a dashboard-mounted video camera. (Tr. at 6.) However, the video (marked as Government's Exhibit 10) does not depict Defendant's vehicle drifting in the direction of Officer Michaels' vehicle, because the camera was positioned in a manner to only capture events occurring in front of the police car. (Tr. at 6-7.) After about a five second drift, Defendant corrected and pulled his vehicle back towards the center of his lane. (Tr. at 6.) Officer Michaels estimated that Defendant's vehicle drifted over a distance of roughly 50 feet. (Tr. at 21.)

Officer Michaels stopped Defendant's vehicle for "inattentive driving" and "using a handheld cellular device." (Tr. at 7.) Officer Michaels explained that there is no statute for charging inattentive driving other than reckless driving. (Tr. at 7.) In his discretion, Officer Michaels did not cite Defendant for reckless driving, because Officer Michaels did not feel that Defendant's conduct warranted a reckless driving ticket, which is a Class I misdemeanor. (Tr. at 7-8, 19.) However, Officer Michaels believed that he had sufficient evidence to charge Defendant with reckless driving. (Tr. at 19.)

Officer Michaels recognized that texting while driving constituted a secondary offense. (Tr. at 8.) Officer Michaels identified "inattentive driving" (reckless driving) as the primary offense for the stop of Defendant's vehicle. (Tr. at 8.) Officer Michaels also testified that he could not charge Defendant with both reckless driving and DUI as a result of his experience in

the court system. (Tr. at 8, 18-19.) Officer Michaels would have stopped Defendant's vehicle for only texting even if Defendant had not driven his vehicle recklessly. (Tr. at 10.)

When Officer Michaels stopped Defendant's vehicle, Officer Michaels repeatedly told Defendant that he stopped Defendant for texting (utilizing a handheld cellular device) while driving. (Tr. at 11, 27.) Officer Michaels never told Defendant that he had stopped Defendant's vehicle for inattentive or reckless driving. (Tr. at 11-12, 26.) Officer Michaels explained:

> At the time, I'm not going to sit there and go through a list of charges with an individual on the side of the road or, in this case, in the parking lot during the traffic stop. It is just not what I do. When I do end up coming back up or if I have other tickets that I am going to write that person for, yeah, I'll let them know that that's what they are going to get cited for.

(Tr. at 11.) Officer Michaels ultimately issued citations to Defendant for driving while intoxicated, failing to maintain one lane of travel, using a handheld cellular device while operating the vehicle, resisting arrest without force and possession of marijuana. (Tr. at 16-17.)

After the stop, Officer Michaels determined that Defendant was intoxicated and the officer seized numerous items from inside Defendant's vehicle pursuant to an inventory search. (Tr. at 15.) Among the items recovered, Officer Michaels found a cell phone that belonged to Defendant from the top of the center console of Defendant's vehicle, as well as another phone that belonged to the passenger. (Tr. at 32-33.) Defendant moves to suppress the items seized from his vehicle on the basis that Officer Michaels did not have reasonable suspicion to legally conduct a traffic stop of Defendant's vehicle. (Def.'s Mot. to Suppress (ECF No. 12) at 2.)

II.     Analysis

Defendant's motion raises two issues. First, whether an officer may stop a vehicle based solely on the driver using a handheld device (texting) while driving in violation of the *Code of Virginia* § 46.2-1078.1 (hereafter referred to as the "texting statute") if the officer lacks a basis to

issue a citation for another offense. Because the Virginia texting statute currently renders texting a secondary offense, the Court concludes that an officer may not stop a vehicle solely for a violation of the texting statute. Second, having concluded that an officer may not stop a vehicle solely for texting, the Court must then determine whether another basis existed for Officer Michaels to stop Defendant's vehicle. Concluding that Officer Michaels had cause to stop Defendant's vehicle for reckless driving in violation of the *Code of Virginia* § 46.2-852, the Court finds that a lawful basis existed for stopping Defendant's vehicle.

### A. Officer Michaels' Ability to Stop Defendant's Vehicle For Texting

"Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning" of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 810.

"Courts must employ a commonsense and contextual approach in evaluating the validity of an investigatory detention." *United States v. McBride*, 676 F.3d 385, 392 (4th Cir. 2012). That is so, because when assessing the reasonableness of the stop, courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). "Thus, the term 'reasonable suspicion' should be viewed as a 'nontechnical' concept, which incorporates the 'factual and practical considerations of everyday life' in which prudent persons act." *McBride*, 676 F.3d at 392 (quoting *Ornelas v. United States*, 517 U.S. 690, 695-96 (1996)). And it bears remembering that "reasonable suspicion" is a less

5

demanding standard than that for probable cause. *United States v. Powell*, 666 F.3d 180, 186 (4th Cir. 2011).

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *United States v. Sowards*, 690 F.3d 583, 588 (4th Cir. 2012) (quoting *Whren*, 517 U.S. at 810); *see also United States v. Mubdi*, 691 F.3d 334, 340 (4th Cir. 2012) (same); *United States v. Hassan El*, 5 F.3d 726, 730 (4th Cir. 1993) ("[W]hen an officer observes a traffic offense or other unlawful conduct, he or she is justified in stopping the vehicle under the Fourth Amendment."). "Observing a traffic violation provides sufficient justification for a police officer to detain the offending vehicle for as long as it takes to perform the traditional incidents of a routine traffic stop." *United States v. Branch*, 537 F.3d 328, 335 (4th Cir. 2008). But, the very purpose of allowing a police officer to stop a vehicle for a traffic violation is for enforcement of the statute violated. *See id.*, 537 F.3d at 336 ("once the driver has demonstrated that he is entitled to operate his vehicle, and the police officer has issued the requisite warning or ticket, the driver must be allowed to proceed on his way.") (internal quotation marks and citation omitted); *see also id.* at 337 ("If a police officer observes a traffic violation, he is justified in stopping the vehicle for long enough to issue the driver a citation and determine that the driver is entitled to operate his vehicle.").

Here, however, the Virginia General Assembly has placed a significant restriction on the enforcement of texting violations by removing the ability to issue a citation for the offense when no other offense is involved. The current version of the Virginia statute involving the use of handheld personal communications device mandates: "No citation for a violation of this section shall be issued unless the officer issuing such citation has cause to stop or arrest the driver of such motor vehicle for the violation of some other provision of this Code or local ordinance

relating to the operation, ownership, or maintenance of a motor vehicle or any criminal statute." *Code of Virginia* § 46.2-1078.1(C). Thus, the statute renders texting a secondary offense.[3] Because an officer may not enforce the texting statute (*i.e.*, issue a citation) absent another violation, an officer may not stop a vehicle based solely on a violation of this statute. *See Graves v. Austin*, 2012 WL 6019099 at *2 n. 5 (W.D. Va. Dec. 3, 2012) ("Under the Virginia Code, an officer may not effectuate a stop of a driver for not wearing a seat belt; it is a secondary offense."); *see also Commonwealth v. Graham*, 2000 WL 1810020, at *3 (Va. Cir. Ct. 2000) (J. Kelsey) (noting that the legislature specifically withdrew authority for law enforcement officers to stop vehicles for the secondary offense of failure to wear a seat belt) (discussing *Commonwealth v. Fells*, 50 Va. Cir. 55 (Va. Cir. Ct. 1999)). Therefore, a police officer may not stop a vehicle solely for a violation of the texting statute.

In an effort to avoid the limitations contained in the texting statute, the Government raises an argument grounded in the Supreme Court's decision in *Virginia v. Moore*, 553 U.S. 164 (2008). But, that reliance is misplaced here. In *Moore*, a Virginia procedural statute limited the initiation of prosecution for driving on a suspended license to the issuance of a summons, prohibiting an arrest for that misdemeanor offense. *Id.* at 168. Despite the statutory mandate, the police officers arrested Moore for the offense, finding a quantity of cocaine during a subsequent search incident to arrest. *Id.* at 167. The Court concluded that "warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections." *Id.* at 176.

---

[3] Notably, an amendment to the statute has been offered in the General Assembly that would strike this mandate, thereby converting a violation of the statute to a primary offense. H. B. No. 1357, 2013 Gen. Assemb., 2013 Sess. (Va. 2013).

7

Section C of § 46.2-1078.1, however, does not implicate a simple procedural mechanism for enforcement. Instead, it strikes at the very essence of whether an offense occurred. Absent an accompanying primary offense, the offense may not be *charged* — a significant difference from merely dictating the *manner* in which a charge will be processed. Indeed, the Court in *Bostic v. Rodriguez*, 667 F. Supp. 2d 591 (E.D.N.C. 2009), reached a similar conclusion when addressing a potential violation of the North Carolina seat belt law. In rejecting a challenge based on *Moore*, the Court refused to read *Moore* "to undermine the more basic principle that an officer cannot arrest an individual when the officer lacks probable cause to believe that a crime has occurred and that state law determines whether a particular act constitutes a crime." *Id.* at 608 n. 6. As currently drafted, the Virginia texting statute mandates the existence of a primary offense before a texting violation may be charged, thereby determining that no chargeable offense for texting exists absent an accompanying primary offense. Consequently, a stop of a vehicle by a police officer based solely on the driver texting while driving offends the Fourth Amendment.

B. Officer Michaels Could Have Stopped Defendant's Vehicle for Reckless Driving

Having concluded that Officer Michaels could not stop Defendant's vehicle solely for a violation of the texting statute, the Court must next determine whether Officer Michaels had "cause to stop or arrest [Defendant] for the violation of some other provision of [the *Code of Virginia*] or local ordinance relating to the operation, ownership, or maintenance of a motor vehicle or any criminal statute." *Code of Virginia* § 46.2-1078.1(C). For the reasons that follow, the Court finds that Officer Michaels had "cause to stop or arrest" Defendant for reckless driving

8

in violation of the *Code of Virginia* § 46.2-852.[4]

During the suppression hearing, Officer Michaels testified that he stopped Defendant's vehicle for both "inattentive driving" and texting while driving, as a result of Defendant swerving his vehicle in a manner that it nearly struck Officer Michaels' car. (Tr. at 7.) When questioned by the Court as to the statutory violation for "inattentive driving," Officer Michaels cited the reckless driving statute. (Tr. 7-10.) Section 46.2-852 provides: "Irrespective of the maximum speeds permitted by law, any person who drives a vehicle on any highway recklessly or at a speed or in a manner so as to endanger the life, limb, or property of any person shall be guilty of reckless driving."

"The essence of the offense of reckless driving lies not in the act of operating a vehicle, but in the manner and circumstances of its operation." *Powers v. Commonwealth*, 211 Va. 386, 388, 177 S.E.2d 628, 630 (1970). "The word 'recklessly' as used in the statute imparts a disregard by the driver of a motor vehicle for the consequences of his act and an indifference to the safety of life, limb or property." *Id.* By texting while driving, which resulted in Defendant's vehicle nearly striking Officer Michaels' vehicle, Defendant recklessly operated his vehicle "in a manner as to endanger, the life, limb, or property" of Officer Michaels. *See Phillips v. Commonwealth*, 25 Va. App. 144, 155-56, 487 S.E.2d 235, 241 (1997) (a police officer driving his vehicle across double yellow line and nearly striking another vehicle absent an emergency constituted reckless driving). Officer Michaels' testimony, which the Court found credible, established that he had to use his brakes to avoid being struck by Defendant's vehicle as Defendant's vehicle drifted towards the officer's lane. (*See* Tr. at 6 ("If he [Defendant] had

---

[4] Because Officer Michaels acknowledged that he did not actually see whether Defendant crossed his vehicle into the officer's lane and because the Government has not advanced failure to stay in one lane as a basis for the stop, the Court only addresses whether Officer Michaels had cause to stop Defendant for reckless driving.

9

continued to drift towards my vehicle he would have drifted into my lane and he would have struck my vehicle. I believe that when I applied my brakes and started backing off from him, that was, that was enough to . . . avoid any type of collision, whether it be that or his actions.").)[5]

Defendant raises three challenges to his having violated the reckless driving statute. First, he essentially challenges Officer Michaels' credibility as to his ability to cite Defendant for reckless driving, saying that the officer never told Defendant after the stop that he was stopping him for reckless driving. Instead, Officer Michaels only told Defendant that he stopped him for texting. (Tr. at 11, 27.) Citing to *United States v. Tibbetts*, 396 F.3d 1132 (10th Cir. 2005), Defendant argues that this fact speaks to the Officer's subjective intent for stopping Defendant's vehicle. (Def.'s Mot. to Suppress at 4.) However, "[w]hile it is assuredly good police practice to inform a person of the reason for his arrest at the time he is taken into custody, [the Supreme Court has] never held that to be constitutionally required." *Devenpeck v. Alford*, 543 U.S. 146, 155 (2004).

"Subjective intentions play no role in ordinary, probable cause Fourth Amendment analysis." *Whren*, 517 U.S. at 813. Further,

> a police officer's decision to stop and detain an individual must be evaluated objectively. Thus, the lawfulness of a [vehicle stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968)] turns not on the officer's actual state of mind at the time the challenged action was taken, but rather on an objective assessment of the officer's actions. In other words, if sufficient objective evidence exists to demonstrate reasonable suspicion, a *Terry*

---

[5] In his reply, Defendant challenges the officer's need to apply his brakes, saying that the officer's dashboard camera "shows absolutely no sudden or drastic maneuvers to avoid a collision." (Def.'s Reply (ECF No. 16) at 2). The videotape obtained from the officer's dashboard camera (Gov. Ex. 10) fails to capture the events leading up to Officer Michaels braking, because the camera was pointed forward, not to the side where Defendant's vehicle was traveling. However, the videotape does depict the officer's vehicle slowing to an extent that Defendant's vehicle moved in front of it, which is consistent with the officer's description of the events. Thus, nothing depicted in the videotape undermines the Court's finding that Officer Michaels was credible as to his description of the events at issue.

stop is justified regardless of a police officer's subjective intent.

*Branch*, 537 F.3d 337 (internal quotation marks and citations omitted). "Any ulterior motive a police officer may have for making the traffic stop is irrelevant." *United States v. Digiovanni*, 650 F.3d 498, 506 (4th Cir. 2011). The issue then is simply whether an objective police officer had reasonable suspicion to stop Defendant's vehicle for reckless driving at the time that Defendant swerved his vehicle, nearly striking the officer's vehicle. For the reasons detailed above, the Court answers this question affirmatively.

Defendant next points to Officer Michaels' admission that he would not have charged Defendant with reckless driving, because the officer did not believe that Defendant's conduct warranted a Class I misdemeanor charge. (Def.'s Mot. to Suppress at 6.) This argument fails for two reasons. First, the texting statute merely requires the officer to have "cause to stop or arrest the driver" for another violation — it does not mandate the actual issuance of a citation or the arrest of the driver — and as detailed above, Officer Michaels clearly had cause to charge Defendant with reckless driving, regardless of whether he ultimately did so. Second, as the Supreme Court in *Alford* made clear, the ultimate charging decisions of a police officer have no impact on whether probable cause existed at the time of the stop. *Alford*, 543 U.S. at 153-56. Instead, the analysis continues to objectively focus on whether a reasonable police officer could have issued a citation for reckless driving at the time of the stop — not whether an actual citation was issued.

Finally, Defendant challenges Officer Michaels' assertion that the Court held a policy of not charging reckless driving along with driving under the influence of alcohol, which was ultimately charged here. (Def.'s Reply at 1.) Although the Court had no knowledge of such a policy and refused to take judicial notice of such a policy at the hearing (Tr. at 38), subsequent

11

research reveals that the *Code of Virginia* § 19.2-294.1 prohibits charging both reckless driving and driving while intoxicated when the offenses grow out of the same act of driving. *See Lawson v. Commonwealth*, __ Va. App. __, 734 S.E.2d 714, 715-16 (2012) (dismissing driving under the influence charge after defendant had been convicted of reckless driving arising out of the same act of driving); *White v. Commonwealth*, 26 Va. App. 410, 413, 494 S.E.2d 896, 897 (1998) ("Under the plain and unambiguous terms of Code § 19.2-294.1, one may not be 'charged' and 'convicted' of both DUI and 'reckless driving.'"); *Harris v. City of Virginia Beach*, 19 Va. App. 214, 450 S.E.2d 401 (1994) (same). Thus, Officer Michaels accurately recited the law on this point, which further supports his credibility as well as his decision not to charge Defendant with reckless driving after determining that Defendant was driving under the influence of alcohol.

Ultimately, however, Officer Michaels' subjective decision-making about whether to issue a reckless driving citation holds little relevance to the resolution of the motion. Instead, the issue is simply whether, when objectively viewing the facts at the time of the stop, a reasonable police officer had *cause* to issue a citation for reckless driving. And the evidence introduced during the suppression hearing established that Officer Michaels had *cause* to do so. When a police officer observes an inattentive driver texting while driving and then nearly collides with the driver's vehicle because the driver has allowed his vehicle to drift towards the police officer's driving lane, a police officer has reasonable suspicion that the driver is driving recklessly. Consequently, Officer Michaels properly stopped Defendant's vehicle and, therefore, Defendant's suppression motion must be denied.

III. <u>Conclusion</u>

For the reasons set forth above, Defendant's Motion to Suppress (ECF No. 6) is

DENIED. An appropriate Order shall be issued consistent with this Opinion.

Let the Clerk file this Order electronically and notify all counsel accordingly.

An Order shall issue.

/s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Dated: January 4, 2013